# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-508V
Filed: March 4, 2021
PUBLISHED

| | |
|---|---|
| ASHLEY BALL, on behalf of P.L., a minor,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                Respondent. | Special Master Horner<br><br>Dismissal Decision; Order to Show Cause; Insufficient Proof; Failure to Prosecute |

*Mark Sadaka*, Mark T. Sadaka, LLC, Englewood, NJ, for petitioner.
*Lara Ann Englund*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION[1]

On April 6, 2018, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012)[2] on behalf of her minor child, P.L., alleging that various childhood vaccinations[3] received on May 1, 2015, caused him to suffer encephalopathy and seizure disorder.[4] (ECF No. 1.) For the reasons discussed below, this petition is now dismissed.

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

[3] Specifically, P.L. received the diphtheria-tetanus-acellular pertussis ("DTaP"), hepatitis B ("Hep B"), inactivated poliovirus ("IPV"), Hemophilus influenzae type B ("Hib"), pneumococcal conjugate, and rotavirus.

[4] The date of vaccination referenced in the petition appears to be a typographical error. The medical records reflect that P.L. received his childhood vaccines on December 21, 2014, March 13, 2015, May 20,

**I.     Procedural History**

This case was originally assigned to Special Master Moran. (ECF No. 4.) Petitioner was ordered to file additional records, an affidavit, and a Statement of Completion. Petitioner completed such filings on February 26, 2019. (ECF No. 29.)

On May 23, 2019, respondent filed his Rule 4(c) report, recommending against compensation. (ECF No. 32.) Specifically, respondent argues that petitioner has not established a Table injury nor a causation-in-fact claim. Respondent stated that petitioner has not provided evidence to show that P.L. had a decreased level of consciousness lasting 24 hours after his vaccinations. (*Id.* at 11.) Additional records were requested. (ECF No. 33.)

This case was subsequently reassigned to my docket on August 27, 2019. (ECF No. 38.) Further records were filed. (ECF Nos. 39, 44.) I ordered petitioner to file an expert report to support her claim on December 16, 2019.

Since then, petitioner has filed six motions for an extension of time to file her expert report, but to date has not filed any expert opinion to support her claim. On November 12, 2020, petitioner requested a status conference. Petitioner's counsel reported that he has identified an expert to opine in this case, but the expert requires additional information from petitioner that has not yet been provided. Petitioner's counsel confirmed that without that additional information, the expert will not be willing to opine in this case.

On December 3, 2020, I issued an Order to Show Cause why this case should not be dismissed for failure to prosecute and for insufficient proof. (ECF No. 51.) On March 3, 2021, petitioner's counsel submitted an affidavit detailing his attempts to contact petitioner regarding the need to obtain an expert report and respond to the Order to Show Cause. (ECF No. 52-1.)

Mr. Sadaka confirmed that he provided petitioner a copy of the Order to Show Cause and explained that petitioner's case was in jeopardy of involuntary dismissal. (*Id.*) Mr. Sadaka averred that he made numerous attempts to contact petitioner and indicated that his last contact with petitioner was via email on February 19, 2021 and that subsequent attempts on three various occasions thereafter was unsuccessful. (*Id.* at 3.) Although petitioner represented to Mr. Sadaka that she was gathering the information necessary for preparation of an expert report, she ultimately did not provide her counsel with the material necessary to respond to the Order to Show Cause. (*Id.*)

---

2015, and August 4, 2015. (*See, e.g.*, Ex. 8.) There is no evidence of any vaccinations having been administered on May 1, 2015.

2

**II.     Factual History**

P.L. was born on December 21, 2014.  He received his DTaP, Hep B, Hib, IPV, rotavirus, and pneumococcal vaccinations on March 13, 2015 during his two-month well-child visit.  (Ex. 8, p. 1.)  He went to the emergency room at Elkhart General Hospital, four days later on March 17, 2015 for a choking episode.[5]  (Ex. 7, p. 22.)  Upon physical examination, P.L. was noted to be "Alert, appropriate for age, no acute distress, Non-toxic appearance. Happy and kicking his legs vigorously in the room." (*Id.* at 23.)  His choking episode was resolved and P.L. was dismissed home the same day.  (*Id.* at 24.)  The next day on March 18, 2015, P.L. went to his PCP's office for a follow-up visit.  (Ex. 3, p. 32.)  P.L.'s mom was concerned about reflux issues and precautionary methods were discussed.  P.L. needed a swallow study.  (*Id.* at 34.)

On April 16, 2015, P.L. was complaining of wheezing, cough, diarrhea, and congestion at his PCP's office.  (Ex. 3, pp. 27-28.)  He was assessed with an upper respiratory infection.  (*Id.* at 29-30.)

On May 20, 2015, P.L. received another dosage of his vaccinations.  (Ex. 3, p. 25; Ex. 8, p. 1.)  Three days later, on May 23, 2015, he saw his PCP for a well-child visit and his exam was normal.  (Ex. 3, pp. 19-24.)  P.L. was noted to meet his developmental milestones, except that he did not eat well.  (*Id.* at 20-21.)

On June 2, 2015, P.L. visited his PCP for a follow up after his stay at the hospital due to an episode of convulsing.  (Ex. 3, pp. 15-16.)  During physical examination, P.L. was alert and interactive.  (*Id.* at 16.)  P.L. was scheduled for further GI follow-up testing.

On August 4, 2015, P.L. had a six-month well-child visit and received an additional set of vaccinations.  (Ex. 3, p. 2; Ex. 8, p. 1-2.)  In follow-up with his GI issues, P.L.'s mom reported that he was allergic to soy and that although, P.L. was diagnosed with impetigo, his mom had her doubts on this diagnosis.  (Ex. 3, p. 2.)  His exam appears to be normal and P.L. was reported to be alert and interactive.  (*Id.* at 3.)

P.L.'s next medical encounter was not until September 4, 2015.  He presented to the emergency department at Elkhart General Hospital for a fever and congestion.  (Ex. 7, p. 57.)  Petitioner reported that P.L. had a cough and rhinorrhea.  (*Id.*)  The history of present illness addresses only the prior four days.  (*Id.*)  Upon examination, P.L. was alert and cooperative, but did have a cough.  His chest x-ray was normal.  (*Id.* at 63.)  P.L. was treated with Prelone and amoxicillin and discharged to be seen by his pediatrician for a follow-up.  (*Id.* at 59-60.)

---

[5] Of note, the history provided at the time of presentation places a previous choking episode at 9pm on the prior evening.  (Ex. 7, p. 22.)  Assuming P.L.'s pediatrician operates normal office hours, this episode would necessarily be beyond 72-hours post-vaccination.

### III.   **Discussion**

In general, to receive compensation in the Vaccine Program, a petitioner must prove either (1) that the vaccinee suffered a "Table Injury" – *i.e.*, an injury falling within the Vaccine Injury Table – corresponding to a covered vaccine, or (2) that the vaccinee suffered an injury that was actually caused by a covered vaccine.  *See* §§ 13(a)(1)(A) and 11(c)(1).

My examination of the record does not disclose any evidence that petitioner suffered a "Table Injury."  In order to prevail on a Table claim of encephalopathy, petitioner must show that there was an onset of an acute encephalopathy within 72 hours after vaccination.  42 U.S.C. § 300aa-14(a).  However, there are no records indicating that P.L. suffered any altered consciousness within that timeframe following any of the occasions on which he received his vaccinations.  In fact, the records of visits following vaccinations, recorded by his treating physicians, noted that P.L. was active and alert.

Alternatively, petitioner must prove P.L.'s injury was caused (or significantly aggravated) by one or more of his vaccinations.  To satisfy her burden of proving causation in fact, petitioner must show by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury."  *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).  The showing of "causation-in-fact" must satisfy the "preponderance of the evidence" standard, the same standard ordinarily used in tort litigation.  § 300aa-13(a)(1)(A); *see also Althen*, 418 F.3d at 1279; *Hines*, 940 F.2d at 1525.  Under that standard, the petitioner must show that it is "more probable than not" that the vaccination was the cause of the injury.  *Althen*, 418 F.3d at 1279.

The Vaccine Act itself forbids a special master from ruling in petitioner's favor based solely on his or her assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician.  42 U.S.C. § 300aa-13(a)(1).  In this case, the medical records do not contain preponderant evidence indicating that P.L.'s condition was vaccine-caused, aggravated, or in any way vaccine-related and are therefore inadequate on their own to support petitioner's cause-in-fact claim.  Petitioner has not filed any expert medical opinion to support her allegations.

Pursuant to Vaccine Rule 8(a), the special master "will determine the format for taking evidence and hearing argument based on the specific circumstances of each case and after consultation with the parties."  Vaccine Rule 8(d) expressly authorizes the special master to decide a case based on the written record without holding an evidentiary hearing. Special masters "must determine that the record is comprehensive and fully developed before ruling on the record."  *Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020) (citing *Simanski v. Sec'y of Health & Human Servs.*, 671 F.3d 1368, 1385 (Fed. Cir. 2012); *Jay v. Sec'y of Health & Human*

*Servs.*, 998 F.2d 979, 983 (Fed. Cir. 1993.)); *see also* Vaccine Rule 8(d); Vaccine Rule 3(b)(2). The parties must have a full and fair opportunity to present their case and develop a record sufficient for review. *Id.*

Based on the above-described procedural history, I conclude that petitioner has had a full and fair opportunity to develop a record. In this case, petitioner was given multiple opportunities to address the issues raised in respondent's Rule 4 Report responding to her allegations. Moreover, I have already provided petitioner a generous period, since December of 2019, within which to secure an expert opinion.

Additionally, under Vaccine Rule 21(b), the special master may dismiss a petition for failure of the petitioner to prosecute or comply with any order of the special master. Despite having over one year to do so, petitioner has been unable to comply with the order to file an expert report. Petitioner's duty to prosecute is not her counsel's alone. Despite petitioner's counsel's many attempts to cooperate with petitioner to pursue her case, petitioner has been unresponsive.

### IV. Conclusion

This case is now **DISMISSED** both for failure to prosecute and for insufficient proof. The clerk of the court is directed to enter judgment in accordance with this decision.[6]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.